## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARCO TORRES,

    **Plaintiff,**

v.

KANSAS HEAVY CONSTRUCTION, L.L.C.,

    **Defendant.**

Case No. 2:17-CV-2130-JAR-JPO

## MEMORANDUM & ORDER

Plaintiff Marco Torres brings claims against Defendant Kansas Heavy Construction L.L.C. for discrimination and sexual harassment in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Before the Court are Defendant's Motion for Summary Judgment (Doc. 38) and Plaintiff's Motion for Extension of Time to Respond to Requests for Admission and Respond to Defendant's Motion for Summary Judgment (Doc. 46). For the reasons set forth in detail below, Defendant's motion is granted and Plaintiff's motion is denied.

### I. Procedural Background

A detailed recounting of the procedural history of this case is a necessary preface to the Court's analysis. Plaintiff filed his Complaint on March 1, 2017, asserting claims for sexual harassment, employment discrimination based on race and gender, and hostile work environment.[1] Plaintiff, an Hispanic male, alleges that he began working for Defendant as a construction laborer on August 7, 2014, and that his supervisor, Bob Zink, frequently addressed him using derogatory and offensive language, including the terms "bitch," "stupid Mexican,"

---

[1] Doc. 1.

"sissy," and "wet back."[2] Plaintiff further alleges that Zink sexually harassed and assaulted him on multiple occasions by groping Plaintiff's buttocks, slamming his crotch into Plaintiff's buttocks, and attempting to force Plaintiff's mouth to his crotch. Plaintiff alleges that he repeatedly asked Zink to stop both the verbal and physical harassment to no avail, and that Defendant was aware of Zink's conduct but did nothing to stop it. Plaintiff alleges that Defendant fired him on June 5, 2015. Plaintiff contends that he was subjected to a hostile work environment during his ten months of employment, and that Defendant fired him as a direct consequence of his complaints about Zink's actions and his rejection of Zink's sexual advances.

After Plaintiff filed his Complaint in March 2017, he sought an extension of time to effectuate service and did not serve Defendant until late June 2017.[3] When Defendant failed to answer or otherwise appear, Plaintiff moved for default judgment, and the Clerk entered default on August 8, 2017.[4] However, Defendant's counsel entered his appearance on August 17, 2017 and filed a motion to set aside the default judgment on the same date.[5] Plaintiff's now-former counsel, Mark E. Meyer, consented to the motion to set aside entry of default, and the Court granted Defendant's motion on August 22, 2017.[6]

Magistrate Judge James P. O'Hara issued a scheduling order on October 23, 2017.[7] The parties were to mediate by January 22, 2018, complete discovery by April 23, 2018, and file dispositive motions by June 4, 2018. Trial was set for February 2019.

---

[2] *Id.* ¶ 15.
[3] Docs. 4–6.
[4] Doc. 8.
[5] Docs. 9, 10.
[6] Doc. 13.
[7] Doc. 22.

The parties scheduled mediation for January 19, 2018, but Plaintiff failed to appear despite having been informed of the mediation date in advance and despite his counsel's attempts to reach him on that day.[8] On February 23, 2018, Plaintiff's attorney, Mr. Meyer, sent him the following letter:

> I write to follow up on my phone calls, my prior letter and my e-mails of January 18, 2018 and February 13, 2018. You did not appear for the scheduled mediation in your case and I have been unable to reach you via phone, letter or e-mail. Accordingly, I have been unable to pursue your case and cannot ethically continue as your attorney, absent some participation from you in the case.
>
> Please contact me by phone, email or letter at the address above by March 5, 2018, so that we may discuss the continued pursuit of this case. If I do not hear from you by that date, I will be compelled to file a motion to withdraw as your counsel.
>
> If I am granted leave to withdraw as your counsel, I am obligated to admonish you that you will be responsible for complying with all orders of the court and time limitations established by the applicable rules of civil procedure and Court Order in this case. I enclose the scheduling order which sets forth the deadlines ordered by the Court as well as the dates of trials, hearings and conferences set in this case.[9]

Defendant served its initial discovery requests upon Plaintiff on February 27, 2018.[10] A week later—on March 5 and 6, 2018—Plaintiff did call Mr. Meyer in response to the February 23 letter, as indicated by phone records submitted by Plaintiff in support of his motion for leave to respond out of time.[11] Following those phone calls, however, Mr. Meyer sent Plaintiff a second letter stating:

> I write to follow up on my prior correspondence. Thank you for the phone call which followed it. In addition to the other

---

[8] Doc. 30.

[9] Doc. 32-1 at 1.

[10] Doc. 31.

[11] Doc. 46-1 at 6.

3

> concerns cited in that letter, I have had some professional obligations arise which will make it untenable for me to continue to represent you. Accordingly, I enclose my motion to withdraw as your counsel. You should seek another attorney as soon as possible and advise me of who you hire. I am sorry that I will not be able to continue to represent you.[12]

This second letter did not mention the discovery requests served on February 27, 2018, and the Court does not know whether or when Mr. Meyer passed those requests along to Plaintiff.

On March 5, 2018, Mr. Meyer moved to withdraw as Plaintiff's counsel. In support of his motion, Mr. Meyer stated that Plaintiff had "failed to communicate [with him] despite numerous attempts and ha[d] failed to participate in the litigation of this case, including his failure to attend the mediation . . . ."[13] Mr. Meyer did not mention in his motion that Plaintiff had recently been in contact with him.

While the motion to withdraw was pending, Mr. Meyer sought and obtained an extension from the Court of Plaintiff's deadline to respond to Defendant's discovery. Mr. Meyer's motion stated that the "extension [was] necessary to avoid prejudice to the Plaintiff as a result of his attorney's withdrawal."[14] Plaintiff's new deadline for responding to Defendant's discovery was April 6, 2018.[15]

On March 22, 2018, Defendant requested dates for Plaintiff's deposition in a letter to Plaintiff's counsel, who had not yet been granted leave to withdraw.[16] Neither Plaintiff's counsel nor Plaintiff ever responded with deposition dates.

---

[12] Doc. 46-1 at 4. Although this letter is dated February 23, 2018, it appears that it was sent on or around March 6, 2018.

[13] Doc. 32 at 1.

[14] Doc. 35.

[15] Doc. 36.

[16] Doc. 39-1 at 3–4.

On March 28, 2018, Judge O'Hara denied Mr. Meyer's motion to withdraw because it was not accompanied by sufficient proof of service upon Plaintiff as required by D. Kan. Rule 83.5.5(a)(4).[17] While Plaintiff was still represented by Mr. Meyer, the April 6 deadline for Plaintiff to respond to Defendant's discovery came and went, but neither Mr. Meyer nor Plaintiff served responses.

On April 9, 2018, Defendant sent Plaintiff a letter, via Mr. Meyer, informing him that his discovery responses were overdue and again asking him to supply dates for his deposition.[18] Defendant received no response to this letter. Defendant then filed a motion for summary judgment on April 20, 2018 based on its requests for admissions being deemed admitted due to Plaintiff's failure to respond.

On April 21, 2018, Plaintiff sent Mr. Meyer an email stating:

> I appreciate you emailing the discovery info but it states that the deadline is on April the 23rd & I believe I requested for the information to be shared with me on or around 3/5/18. Although I have read the sent information I still don't have the knowledge or background on how to proceed with the given information.[19]

From the correspondence attached to the parties' pleadings, it is unclear what "discovery info" Plaintiff received from Mr. Meyer and when he received it. In any event, it appears that Plaintiff mistakenly believed he had until April 23, 2018—the deadline in the scheduling order for the completion of all discovery—to respond to Defendant's discovery requests. To date, Plaintiff still has not provided responses.

---

[17] Doc. 37.

[18] Doc. 39-1 at 7–9.

[19] Doc. 46-1 at 5.

Mr. Meyer's motion to withdraw was ultimately granted on April 23, 2018.[20] On the same date, Judge O'Hara issued a Notice and Order to Show Cause directing Plaintiff to show cause to the undersigned, on or before May 11, 2018, why this action should not be dismissed in its entirety with prejudice for lack of prosecution under Fed. R. Civ. P. 41(b).[21] Judge O'Hara found that Plaintiff had stopped participating in the case, was not responding to his now former attorney's attempts to reach him, and failed to attend the scheduled mediation.[22]

On May 23, 2018, nearly two weeks after the May 11 deadline, the Court received a letter from Plaintiff in response to Judge O'Hara's order.[23] In that letter, Plaintiff stated that he misplaced his cell phone in January and, although he obtained a new phone by January 7, 2018, his email was not restored to his phone until early February. Plaintiff claims that this disruption in his ability to communicate by email caused him to miss the mediation scheduled for January 19, 2018, but that he never stopped participating in his case. Plaintiff stated that he had managed to find a new attorney who was "guiding [him] through this process until given the opportunity to possibly take over [his] case."[24]

Although Plaintiff's response to the show-cause order was late, the Court granted him a final chance to avoid the dismissal of his case. The Court ordered Plaintiff to file a motion on or before June 14, 2018 establishing excusable neglect for his failure to respond to Defendant's summary judgment motion and seeking leave to respond out of time pursuant to D. Kan. Rule 7.4(b) and Fed. R. Civ. P. 6(b)(1)(B).[25] The Court cautioned that if Plaintiff failed to file such a

---

[20] Doc. 42.
[21] Doc. 43.
[22] *Id.* at 1.
[23] Doc. 44.
[24] *Id.* at 1.
[25] Doc. 45.

motion or failed to establish excusable neglect, the Court would proceed to consider and decide Defendant's motion as uncontested pursuant to D. Kan. Rule 7.4. Plaintiff filed his motion for an extension of time to respond to Defendant's discovery requests and summary judgment motion on June 13, 2018,[26] and Defendant filed a response in opposition on June 27, 2018.[27] Plaintiff failed to file a reply in support of his motion by his deadline of July 11, 2018 pursuant to D. Kan. Rule 6.1(d).

## II.  Plaintiff's Motion for Extension of Time to Respond to Requests for Admission and Respond to Defendant's Motion for Summary Judgment

Pursuant to D. Kan. Rule 6.1(d)(2), Plaintiff's response to Defendant's summary judgment motion was due on May 11, 2018. D. Kan. Rule 7.4(b) provides that "[a]bsent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum." Similarly, Fed. R. Civ. P. 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Thus, under both the local and federal rules, Plaintiff is required to establish excusable neglect before being granted leave to respond out of time.

The relevant factors in considering whether a party seeking leave to respond out of time has established excusable neglect are: "(1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for the delay and whether it was in the reasonable control of the moving party, and (4) the existence

---
[26] Doc. 46.

[27] Doc. 49.

of good faith on the part of the moving party."[28]  "While excusable neglect is a 'somewhat elastic concept,' 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'  'Control over the circumstances of the delay is a very important factor—perhaps the most important single factor in determining whether neglect is excusable.'"[29]

Regarding the first factor, the Court finds that Defendant has already been prejudiced by Plaintiff's pattern of failing to participate in this case and would suffer further prejudice if Plaintiff was permitted to respond to Defendant's discovery requests and summary judgment motion out of time.  Plaintiff did not respond to Defendant's discovery requests—despite receiving an extension of time—depriving Defendant of the opportunity to construct a factual defense to Plaintiff's claims and causing Defendant to prepare, instead, a motion for summary judgment premised on Plaintiff having admitted Defendant's requests for admissions.  Further, because neither Plaintiff nor his former attorney supplied dates for Plaintiff's deposition, Defendant was unable to depose Plaintiff before the discovery deadline.  Allowing Plaintiff to respond to Defendant's discovery now—six months after it was propounded and four months after it was due—would render the pending motion for summary judgment moot and force Defendant to incur the costs of preparing a second motion, well past the deadline for dispositive motions.

Plaintiff also failed to appear for mediation, causing Defendant to unnecessarily incur the costs of preparing for and attending mediation.  Plaintiff's former counsel did appear on the scheduled date, and informed Defendant's counsel that he had confirmed the mediation date with

---

[28] *Scott v. Power Plant Maint Specialists, Inc.*, Civil Action No. 09-CV-2591-KHV, 2010 WL 1881058, at *2 (D. Kan. May 10, 2010) (citing *Hamilton v. Water Whole Intern. Corp.*, 302 F. App'x 789, 798 (10th Cir. 2008)).

[29] *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, Civil Action No. 09-2517-DJW, 2011 WL 1344146, at *1 (D. Kan. Apr. 8, 2011) (quoting *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No 08-CV-2662-JAR-DJW, 2011 WL 939182, at *2 (D. Kan. Feb. 25, 2011)).

Plaintiff ahead of time.[30] Plaintiff's former counsel also attempted to reach Plaintiff on the date of the mediation, but Plaintiff did not respond (despite having obtained a new cell phone).[31] Plaintiff's pattern of failing to participate in this case—including his failure to appear for mediation, provide a date for his deposition, answer written discovery, and timely oppose Defendant's summary judgment motion—is prejudicial to Defendant.

The Court finds that the second factor in the excusable neglect inquiry, which considers the length of the delay caused by the neglect and its impact on judicial proceedings, also counsels against permitting Plaintiff to respond out of time. The discovery deadline in this case was April 23, 2018, dispositive motions were due June 4, 2018, and trial is set for February 12, 2019, which is a mere six months away. As Defendant points out, Judge O'Hara was forced to cancel the final pretrial conference set for May 11, 2018 due to Plaintiff's lack of participation.[32] If the Court were to permit plaintiff to respond to Defendant's discovery four months late (and after Defendant has already prepared a motion for summary judgment premised on Plaintiff's failure to respond), the Court would be required to reopen discovery and reset all remaining pretrial deadlines, and the trial of this matter would be substantially delayed.

The Court next examines the reason for the delay and whether it was within Plaintiff's control. Plaintiff contends that he never stopped participating in his case, but that he lost his cellphone in early January 2018 and was unable to "check voicemail or receive emails."[33] Plaintiff states that while he obtained a new phone by January 7, 2018, he was unable to restore his email account to his phone until sometime in early February. While Plaintiff may have been

---

[30] Doc. 39-1 ¶ 4, Declaration of Alex P. Aguilera.

[31] *Id*.

[32] Doc. 43.

[33] Doc. 46 at 2.

unable to make cell phone calls and check voicemail for a few days, this does not explain why he did not attend a mediation of which he was previously made aware. Nor does Plaintiff explain why his lack of a cell phone rendered him completely unable to check his email account which, of course, exists independently of his phone. As Defendant points out, Plaintiff could have accessed his email from a computer available to the public, and there are multiple other ways in addition to email that Plaintiff could have communicated with his former counsel.

Plaintiff also fails to adequately explain why, in addition to neglecting to appear at mediation, he otherwise failed to participate in this case. Plaintiff and/or his former counsel never provided Defendant with a date for Plaintiff's deposition and failed to respond to Defendant's discovery requests. After Mr. Meyer was granted leave to withdraw, Plaintiff continued to neglect his duty to respond to discovery and failed to timely oppose Defendant's motion for summary judgment. Plaintiff contends that these failures are the fault of Mr. Meyer, who had not yet been granted leave to withdraw on the date Plaintiff's discovery responses were due and when Defendant filed its motion for summary judgment. Plaintiff states that he does "not know why [his] attorney allowed the Requests for Admissions to go unanswered,"[34] and points to phone records indicating that he made calls to Mr. Meyer on March 5 and 6, 2018. Plaintiff does not explain why he failed to be in touch with opposing counsel after his attorney was granted leave to withdraw.

The Court has sympathy for Plaintiff under the circumstances of this case, given that his former attorney allowed the deadline for Plaintiff's responses to Defendant's discovery requests to pass without seeking another extension of time. However, the Court's analysis of whether Plaintiff has established excusable neglect does not turn on whether Plaintiff or his former

---

[34] *Id*. at 4.

attorney is at fault for missed deadlines. Litigants are routinely held accountable for their counsel's errors or oversights—there is "nothing novel" about "penalizing [a plaintiff] for his attorney's conduct."[35] And although the Court must construe the pleadings of *pro se* litigants liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys,[36] a plaintiff's *pro se* status does not excuse him from complying with federal and local rules.[37] "In the Tenth Circuit, inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)."[38] Moreover, Plaintiff's pattern of failing to participate in this case, including failing to answer his attorney's calls and emails, appears to have been what initially prompted his attorney to withdraw. The Court finds that the reason for the delay in this case is that Plaintiff—both while represented and while proceeding *pro se*—simply failed to participate, which was a matter within Plaintiff's control.[39]

Finally, the Court considers whether Plaintiff has acted in good faith. Although the record does not suggest that Plaintiff made a good-faith effort to prosecute his case, there is also

---

[35] *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1189 (10th Cir. 2002); s*ee also, e.g.*, *Scott v. Power Plant Maint Specialists, Inc*., Civil Action No. 09-CV-2591-KHV, 2010 WL 1881058, at *4 (D. Kan. May 10, 2010) (noting, in excusable neglect analysis, that "courts are less forgiving when missed deadlines occur because of poor lawyering, e.g., where counsel misconstrues or misinterprets the rules or law or makes poor tactical decisions.") (collecting cases).

[36] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[37] *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (citation omitted); *Azim v. Tortoise Capital Advisors, LLC*, Case No. 13-2267-DDC-JPO, 2016 WL 3405126, at *5 (D. Kan. June 21, 2016) (citations omitted).

[38] *Scott*, 2010 WL 1881058, at *3.

[39] Plaintiff argues that he should be granted leave to respond out of time because the Court granted Defendant's unopposed motion to set aside entry of default. However, Plaintiff's counsel consented to that motion, which was filed just nine days after entry of default and before a scheduling order was entered in this case. Moreover, the "good cause" that must be shown under Rule 55(c) to set aside an entry of default is a less exacting standard than the "excusable neglect" required for relief from a default judgment under Rule 60(b) or for an extension of a missed deadline under Rule 6(b)(1)(B). *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997) ("[I]t is well established that the good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)."); *Scott*, 2010 WL 1881058, at *4 n.3 (noting that Tenth Circuit construes "excusable neglect" standards under Rules 60(b) and 6(b) similarly).

no evidence that Plaintiff acted intentionally or in bad faith. Nonetheless, given the foregoing discussion of Plaintiff's complete failure to participate in this case until now—both during and after his representation by Mr. Meyer—the Court cannot find that lack of bad faith is sufficient to outweigh the prejudice and delay Plaintiff has caused through his neglect.

Having examined the factors, the Court finds that Plaintiff has failed to establish excusable neglect for his failure to timely respond to discovery and oppose Defendant's summary judgment motion. Plaintiff's Motion for Extension of Time to Respond to Requests for Admission and Respond to Defendant's Motion for Summary Judgment is therefore denied, and the Court proceeds to decide Defendant's summary judgment motion as uncontested.

### III. Defendant's Motion for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[40] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[41] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[42] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[43] A

---

[40] Fed. R. Civ. P. 56(a).

[41] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[42] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[43] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[44]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[45] In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[46]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[47] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[48] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[49] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[50] To successfully oppose summary judgment, the nonmovant must bring forward "more than a mere scintilla of evidence" in support of his position.[51] A nonmovant "cannot create a genuine issue

---

[44] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[45] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[46] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[47] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[48] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[49] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[50] *Adler*, 144 F.3d at 671.

[51] *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993).

of material fact with unsupported, conclusory allegations."[52] Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[53]

**B.    Analysis**

Under D. Kan. Rule 7.4,

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

As a result of Plaintiff's failure to establish excusable neglect—and, therefore, inability to oppose Defendant's motion for summary judgment out of time—the Court may grant the motion as uncontested under D. Kan. R. 7.4. Further, based on Defendant's requests for admissions being deemed admitted under Fed. R. Civ. P. 36(a)(3), Defendant is entitled to summary judgment on the merits on all of Plaintiff's claims.[54]

Plaintiff's Complaint contains two counts for sexual harassment—one for harassment resulting in a hostile work environment and one for retaliatory discharge after Plaintiff complained about and rejected Zink's alleged advances. To establish a prima facie case for a hostile work environment claim, a plaintiff must show "(1) that [he] is a member of a protected class; (2) that the conduct in question was unwelcome; (3) that the harassment was based on sex

---

[52] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[53] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[54] Fed. R. Civ. P. 36(a)(3) provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. . . ."

[or race]; (4) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) a basis for imputing liability to the employer."[55] To establish a prima facie claim for retaliatory discharge, a plaintiff must show: "(1) that [he] engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection between the protected activity and the materially adverse action."[56]

Plaintiff also brings a third claim for discriminatory discharge on the basis of race and gender, the elements of which are that: (1) [the plaintiff] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."[57]

The uncontroverted facts submitted by Defendant in its memorandum in support of summary judgment are deemed admitted and incorporated as findings of fact. Those uncontroverted facts include the following, which were the subject of Defendant's requests for admissions to Plaintiff:

- Plaintiff understood that Defendant hired Plaintiff solely to work on the Kansas Avenue Project for the City of Topeka, Kansas.

- Plaintiff understood that Defendant terminated Plaintiff solely due to Plaintiff's attendance and due to scaling back of manpower on the Kansas Avenue Project.

- Bob Zink's actions, words, and conduct were at all times invited.

---

[55] *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)) (stating elements of hostile work environment claim based on sex); *see also Glapion v. Castro*, 646 F. App'x 668, 671 (10th Cir. 2016) ("A prima facie case of hostile work environment in violation of Title VII requires a plaintiff to show membership in a protected group, unwelcome harassment based on the protected characteristic, and 'due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.'") (quoting *Harsco Corp.*, 475 F.3d at 1186).

[56] *Jones*, 528 F. Supp. 2d at 1241–42 (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

[57] *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005)).

- Bob Zink's actions, words, and conduct were neither subjectively nor objectively offensive to Plaintiff.

- Bob Zink did not sexually harass Plaintiff.

- Bob Zink did not racially harass Plaintiff.

- Bob Zink did not discriminate against Plaintiff on the basis of race or gender.

- Defendant did not discriminate against Plaintiff on the basis of race or gender.

- Defendant did not sexually or racially harass Plaintiff.[58]

Bob Zink is the only alleged harasser in this case. The foregoing facts being deemed admitted—including the ultimate fact, that neither Zink nor Defendant discriminated against him on the basis of race or gender—Plaintiff cannot satisfy the elements of a prima facie case for any of his claims and Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Extension of Time to Respond to Requests for Admission and Respond to Defendant's Motion for Summary Judgment (Doc. 46) is **denied** and Defendant's Motion for Summary Judgment (Doc. 38) is **granted**.

**IT IS SO ORDERED.**

Dated: August 28, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[58] Doc. 39-2, Requests for Admission Nos. 8, 9, 14, 15, 17–21.